J-S32032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3887 EDA 2016 |

Appeal from the Decree and Order December 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000915-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3889 EDA 2016 |

Appeal from the Decree and Order December 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000916-2016

BEFORE:   GANTMAN, P.J., STABILE, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 09, 2017**

S.R. ("Mother") appeals from the December 13, 2016 decrees and orders involuntarily terminating her parental rights to K.K.R. (born in August of 2011) and S.C.R. (born in October of 2012) (collectively "Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and

---

[*] Former Justice specially assigned to the Superior Court.

(b), and changing Children's permanency goal to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

On March 5, 2015, Mother and Children first became known to the Department of Human Services of Philadelphia County ("DHS") as a result of a General Protective Services ("GPS") report alleging that Mother resided in an unfit house with Children, abused drugs, did not provide adequate food, and neglected Children.  On March 20, 2015, Mother and Children moved to a drug and alcohol rehabilitation shelter.  Mother was discharged from the shelter due to her non-compliance and inappropriate behavior towards Children.  Mother and Children then moved into another shelter on April 17, 2015.  Shortly thereafter, the shelter evicted Mother after a staff member observed her inappropriately disciplining Children, which included spanking and pinching them.  On April 27, 2015, Mother admitted that she hits Children when DHS met with her to discuss the allegations.  On same day, DHS obtained an Order of Protective Custody ("OPC") for Children and placed them with their maternal aunt, B.C. ("Maternal Aunt").

At the shelter care hearing on April 29, 2015, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand.  The trial

_____

[1] Children have different biological fathers.  The putative father of K.K.R. is unknown, and the putative father of S.C.R. is K.M. ("Father-2").  In separate decrees and orders entered on December 13, 2016, the trial court involuntarily terminated the parental rights of unknown father to K.K.R. and Father-2 to S.C.R.  The unknown father of K.K.R. and Father-2 are not parties to the current appeal, nor did they file separate appeals.

court granted Mother supervised visitation and referred her to the Clinical Evaluation Unit ("CEU") for a drug and alcohol screening and dual diagnosis assessment for mental health and substance abuse. The CEU report issued a progress report on May 5, 2015, revealing Mother tested positive for marijuana and PCP.

On May 8, 2015, the trial court adjudicated Children dependent and committed them to DHS. The case was transferred to the Community Umbrella Agency ("CUA"), which developed a Single Case Plan ("SCP") for reunification with Children. Mother's SCP objectives were: (1) to participate in a dual diagnosis treatment and submit to random drug screens at CEU; (2) to receive referral for Achieving Reunification Center ("ARC"); (3) to engage in parent education classes; (4) to obtain appropriate housing; and (5) to attend supervised visitation with Children. Mother's SCP objectives have remained the same throughout the duration of the case.

On October 5, 2016, DHS filed petitions to involuntarily terminate Mother's parental rights and change Children's permanency goal to adoption. On December 13, 2016, the trial court held a hearing on the petitions. At the hearing, DHS presented the testimony of Essence Jones, the CUA case manager at Turning Points. Mother, represented by counsel, testified on her own behalf. Father-2, represented by counsel, also testified. At the conclusion of the hearing, the trial court entered decrees and orders

terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changing Children's permanency goal to adoption.

On December 30, 2016, while represented by counsel, Mother filed *pro se* notices of appeal and statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]  On January 11, 2017, counsel for Mother, filed amended concise statements of errors complained of on appeal in accordance to Pa.R.A.P. 1925(b).  This Court consolidated Mother's appeals *sua sponte* on January 17, 2017.  Mother raises the following issues.

> Whether the trial court committed reversible errors when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 Pa.C.S. § 2511 (a)(1), (a)(2), (a)(5), and (a)(8)?
>
> Whether the trial court committed reversible errors when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the adoption act, 23 Pa.C.S. § 2511(b)?

Mother's Brief at 4.[3]

_____

[2] We note that Mother's *pro se* concise statements of errors failed to adequately identify in a concise manner or with specificity the issues sought to be pursued on appeal in accordance with Rule 1925(b)(4)(ii).  As such, the trial court directed counsel to assist Mother with her appeals.

[3] In her amended concise statement of errors complained of on appeal and appellate brief, Mother did not challenge the trial court's orders changing Children's permanency goal to adoption.  Thus, this issue is waived.  **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his

*(Footnote Continued Next Page)*

We summarize Mother's two arguments together. Mother contends that the evidence makes it clear that DHS did not prove by clear and convincing evidence that her parental rights should be terminated pursuant to Section 2511(a) of the Adoption Act. Mother's Brief at 8. Mother points out that she has made progress during the course of the case and has demonstrated a willingness to remedy the conditions and causes of the incapacity, abuse, neglect or refusal to perform parental duties. *Id.* at 11. Since the evidence failed to establish that her relationship with Children was severed, Mother argues that DHS failed to prove that termination under Section 2511(b) was in the best interests of Children. *Id.* at 13.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

_(Footnote Continued)_ ───────────────

concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. Clear and convincing evidence is defined as:

> testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (citation omitted).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (quoting *In re: N.C.*, 763 A.2d 913, 917 (Pa. Super. 2000)). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), which provides as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to

> the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his . . . parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re*

- 9 -

***A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." ***Id.*** at 340. Pursuant to Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa. Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P.***, 994 A.2d at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. ***In re C.P.***, 901 A.2d 516 (Pa. Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." ***Id.*** at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***In re Z.P.***, 994 A.2d at 1121.

> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***Id.*** (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have his or her rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa. Super. 2001). Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental

obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855. "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph Fernandes, we conclude Mother's issues on appeal merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. *See* Trial Ct. Op., 1/17/17 , at 3-10 (finding: Children

- 12 -

have been removed from Mother's custody since April 27, 2015, nineteen months at the time of trial due to her drug abuse and inability to appropriately parent Children; Mother's compliance with her SCP goals has steadily declined; Mother tested positive for PCP on September 9th and 29th of 2016; Mother stopped attending her dual diagnosis treatment program and was discharged without successfully completing the program; Mother was referred to ARC for parenting classes, but was unsuccessfully discharged; Mother chose to complete parenting classes elsewhere, but these classes did not improve her ability to parent; Mother has never had appropriate housing; Mother currently lives at a shelter where Children cannot join her; Mother's recent tardiness to her supervised visits with Children has caused some of the visits to be canceled; Mother has visited Children only twice in the last three months; Mother's inconsistency in visiting Children has caused their relationship to become unhealthy; Mother's bond with Children has become very attenuated; Mother cannot provide Children with permanency; Maternal Aunt has provided Children with love, care and stability for the last nineteen months; CUA case manager credibly testified regarding the lack of parental relationship between Mother and Children in contrast to the parental bond that exists between Children and Maternal Aunt; termination of Mother's parental rights would not cause Children irreparable harm; record demonstrates Mother's repeated unwillingness to remedy the cause of her incapacity to parent, her failure to

perform any parental duties, and her inability to remedy conditions that led to the placement of Children; evidence is clear and convincing that termination of Mother's parental rights would be in best interests of Children; thus, court properly terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b)). Accordingly, we affirm on the basis of the trial court opinion.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017